Filed 8/5/21  P. v. Del Rio CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D078225 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CR40676) |
| RAMON DEL RIO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court San Diego County, Peter C. Deddeh, Judge.  Reversed and remanded with directions.

Daniel J. Kessler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

In 1978, Ramon Del Rio was convicted of two counts of first degree murder (Pen. Code,[1] § 187).  He was sentenced to life with the possibility of parole.

Del Rio appealed and this court affirmed his convictions in an unpublished opinion filed May 16, 1979.  (*People v. Del Rio* (May 16, 1979, 4 Crim. No. 8866) [nonpub. opn.].)[2]

In 2019, Del Rio filed a pro. per. petition for resentencing under section 1170.95.  The court appointed counsel, received briefing from the parties, held a telephonic hearing and then denied the petition.  The court found Del Rio was the person who hired the people to kill and rob the victims and was a direct aider and abettor.  As such, the court found Del Rio to be ineligible for relief under section 1170.95.

Del Rio filed a timely notice of appeal.

The record in this case is limited due to the 43-year lapse between the convictions and the postjudgment petition for resentencing.  The parties in the trial court were not able to locate the jury instructions and the closing arguments.  Similarly, they were unable to locate the opinion filed by this court in approximately 1979, affirming the two murder convictions.  There are parts of the record available, including the probation officer's report and the transcript of Del Rio's sentencing hearing.  The parties submitted the matter on the briefs.  Defense counsel did not object to the inclusion of the probation report or the sentencing transcript among the materials to be considered by the court.

---

[1]     All further statutory references are to the Penal Code.

[2]     With the consent of both parties, we take judicial notice of our records in case No. CR40676.

Del Rio contends the court should not have considered materials in the probation report and transcript as they contain hearsay. Appellate counsel recognizes defense counsel arguably forfeited the arguments that appellate counsel now wishes to make. Hence, appellate counsel contends defense counsel in the trial court was ineffective for failing to make the necessary objections to support the new arguments.

After the briefs were submitted, the court became aware the superior court had been unable to locate our prior opinion. We asked court staff to search for a copy of the 1979 opinion, and they were successful in locating a copy.

Once the court had a copy of the prior opinion, the court sent a copy to counsel and asked for supplemental briefing to answer two questions: First, did counsel believe the court should take judicial notice of our records on the prior appeal. The parties answered, "Yes." The second question asked what effect the newly discovered opinion should have on our review of the decision denying Del Rio's petition for resentencing. Once again, the parties were in agreement. Del Rio responded the order should be reversed because the opinion states he was convicted on a felony murder theory and the question of eligibility for resentencing cannot be resolved at the prima facie stage of section 1170.95 review. The Attorney General's answer to our question is that the respondent agrees with Del Rio that the prior opinion opens the question of his role as an aider and abettor convicted on a felony murder theory. We believe the parties have correctly analyzed the record and that reversal and remand are necessary.

STATEMENT OF FACTS

The respondent's supplemental brief contains a summary of the facts as set forth in our prior opinion. The following statement of facts is taken

3

verbatim from this court's unpublished opinion in *Del Rio, supra*, 4 Crim. No. 8866).

"In 1973, Beverly Sutton was married to Ronald Watkins and they lived in Pittsburgh, Pennsylvania. She testified Watkins and a Richard Cannon trafficked in heroin. They came to San Diego many times to buy narcotics from Del Rio. Watkins wore a diamond cluster ring which Del Rio admired. Cannon and Watkins gave a similar ring to Del Rio representing that it was worth more than $1[,]200, although they had paid substantially less for it. Beverly Sutton further testified she and Watkins came to San Diego in May 1973 with Cannon and the two men purchased heroin from Del Rio using $10,000 in cash. Watkins carried $100 bills to avoid large packages of money.

"Watkins returned to San Diego on June 26, 1973, with a girlfriend named Helen Ross. He had $20,000 in large bills. Watkins had notified Del Rio he was coming. He wore the cluster which Del Rio had previously admired. Watkins and Ross were black. They registered at Vacation Village using Ross' name. Cannon owned a white Lincoln Continental which he kept in California and allowed Del Rio to use. When Watkins and Ross made their June trip to San Diego, Cannon did not accompany them.

"Robert Ronimus, the doorman at Vacation Village, saw a white Lincoln Continental parked near the room occupied by Watkins and Ross. He also saw a man walking westerly from the hotel office toward the location of that room when the man was about ten feet from the office door and 100 yards from the room. Before trial, Ronimus had felt Cannon was the man he had seen, but changed his mind at trial describing the weight of the man as being similar to Del Rio. He testified he could not be '100 [percent]' sure that Del

4

Rio was the man, whom he described as being of Mexican Ancestry. Cannon was in Pennsylvania at the time.

"The day after Watkins and Ross checked in, Ronimus entered their room. He observed a few personal items in and near the bathroom. He could not remember his prior statement to a detective; however, at trial counsel stipulated he had reported on July 6, 1973, seeing a woman's purse and several items strewn about on the floor.

"Ronald Watkins' dead body was found near Sea World parking lot on June 27, 1973. Sea World is close to Vacation Village. Helen Ross' remains were found in the same vicinity on June 30, 1973. The clothes on Watkins' upper body had been removed and were lying nearby. Some of the pockets of his clothing had been turned inside out. Papers and other items were on the ground. Watkins' diamond cluster ring was missing. A bedspread from his room contained a blood stain of his type. He had died of stab wounds in the chest and a gunshot wound in the neck. Helen Ross had died of stab wounds.

"Del Rio frequently purchased older automobiles for restoration and resale. On July 16, 1973, he bought a 1969 Mustang for $1[,]400 using an assumed name and 14 $100 bills. Two days later, he bought a 1931 Model A Ford under an assumed name for $964.70 using $100 bills. He purchased another antique Ford in July using an assumed name, paying $1,245 and using 100's, 50's and 20's, but mostly $100 bills.

"In early July, Del Rio took a diamond cluster ring to a jeweler for appraisal, representing it as a gift from his girlfriend. He wore the same ring when he made the third automobile purchase above described. Del Rio maintained throughout the trial the ring he wore was the one given to him by Watkins and Cannon. The People's witnesses, however, identified it as the ring worn by Watkins at or about the time of his death. The diamond cluster

5

ring was recovered by the police from Del Rio's girlfriend whom he had told to hold it for him.

"David Rivera, a cousin of Del Rio, lived in National City in 1973. Before reading or hearing about the killings, Rivera was visited by Del Rio and several other persons. They arrived in a white Lincoln Continental and two other cars. Rivera testified Del Rio told him the Continental he drove belonged to a couple of people who had been killed at Sea World parking lot. Del Rio also told him the ring he wore belonged to one of the persons killed. Further, he stated the persons killed had flown to San Diego to buy narcotics and 'they ripped them off' for $30,000. Del Rio also indicated he had taken money from the victims."

DISCUSSION

A. Legal Principles

Senate Bill No. 1437 was enacted to " 'amend[ ] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Gentile* (2020) 10 Cal.5th 830, 842.)

Senate Bill No. 1437 also created section 1170.95 as a process for persons previously convicted of murder to seek resentencing in light of the changes enacted by Senate Bill No. 1437. Section 1170.95, subdivision (c) provides: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner

6

may file and serve a reply within 30 days after the prosecutor response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

The petitioner has the burden to make a prima facie showing of eligibility for resentencing. If such showing is made the court must issue an order to show cause (OSC) and conduct an evidentiary hearing. After appointment of counsel, the trial court may consider the record of conviction to determine if the petitioner is ineligible for relief as a matter of law. (*People v. Lewis* (July 26, 2021, No. S260598) ___ Cal.5th ___ [2021 Cal. LEXIS 5258].)

The trial court may not make evidentiary determinations at the prima facie stage of petition review, but it may consider readily available facts in assessing the question of eligibility as a matter of law. (*People v. Drayton* (2020) 47 Cal.App.5th 965, 982.) If the record demonstrates ineligibility without engaging in factfinding, the court may deny the petition without issuing an OSC. (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 329-330, review granted Mar. 18, 2020, S260493.)

B. Analysis

When the trial court ruled on the initial analysis of Del Rio's petition it had a sparse record. The court did not have our opinion from the prior appeal. The materials submitted to the trial court indicate Del Rio may well be a direct aider and abettor who acted with intent to kill or reckless indifference to human life, but that cannot be determined from the record at the prima facie stage of the review process.

Our prior opinion indicates Del Rio was tried on a felony murder theory. The People did not argue he was the actual killer, and our opinion

does not specify his exact role in these crimes. As Del Rio contends, and the Attorney General agrees, such determination should await an evidentiary hearing where facts can be determined, credibility decisions made, and the evidence weighed which cannot be done at the initial stage of evaluating this petition. After review of the record, we accept the Attorney General's concession and will reverse the order denying the petition.

DISPOSITION

The order denying Del Rio's petition for resentencing under section 1170.95 is reversed. The case is remanded to the Superior Court with directions to issue an OSC and conduct an evidentiary hearing as required by statute. We express no opinion as to the appropriate result of such process.


HUFFMAN, Acting P. J.

WE CONCUR:


HALLER, J.


AARON, J.